IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TURI K. AARNES<br>786 Jaeger Street<br>Columbus, Ohio 43206 | : : : : | |
| Plaintiff, | : : | Case No. 2:24-cv-2146 |
| v. | : : : | |
| OHIO STATE UNIVERSITY<br>1590 N. High Street, Suite 500<br>Columbus, Ohio 43201 | : : : : : | |
| and | : : | |
| OHIO STATE UNIVERSITY—COLLEGE OF<br>VETERINARY MEDICINE<br>1900 Coffey Road<br>Columbus, Ohio 43210 | : : : : : | |
| and | : : | |
| ANGELA MAROFF<br>173 Chatham Road<br>Columbus, Ohio 43214 | : : : : : | |
| Defendants. | : | |

**COMPLAINT**

1. Both Title VII of the Civil Rights Act and the Equal Pay Act protect women from disparate treatment when compared with their male colleagues. Both statutes also prohibit retaliation by an employer for opposing discrimination and for filing a discrimination complaint.

2. Title VII also protects women from discrimination based on gender stereotypes.

3. Yet, despite these prohibitions, Defendants have discriminated against Dr. Turi Aarnes through discriminatory comments, adverse employment actions, and lower pay than male

colleagues, and Defendants have retaliated against Dr. Aarnes after she filed a complaint regarding this discrimination.

## JURISDICTION

4. This Court has jurisdiction over Dr. Aarnes's claims under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Title VII of the Civil Rights Act and the Equal Pay Act.

5. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law claims, as the claims relate to the same case and controversy.

6. This Court has personal jurisdiction over Defendants because Defendants reside in Ohio, conduct business in Ohio, and a substantial number of events giving rise to the claims took place in Ohio.

7. Pursuant to 28 U.S.C. § 1391(c), all Defendants are residents of Ohio, and all Defendants are residents of this judicial district. Therefore, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

8. Plaintiff Dr. Turi Aarnes is a professor at Ohio State University and resides in Columbus, Ohio.

9. Defendant Ohio State University is a state university with its principal location in Columbus, Ohio.

10. Defendant the OSU College of Veterinary Medicine is part of OSU and has its principal location in Columbus, Ohio.

11. Defendant Angela Marolf is the chair of the Veterinary Clinical Sciences Department at OSU's College of Veterinary Medicine and resides in Columbus, Ohio.

**FACTS**

12. Dr. Aarnes is an Associate Professor in the Veterinary Clinical Sciences Department at OSU's College of Veterinary Medicine, and more specifically, she is part of the Department's Anesthesia and Pain Management Clinical Services. She received her DVM in 2005 from the University of Prince Edward Island. She joined OSU as an anesthesiology resident in July 2006. After residency, Dr. Aarnes became an assistant professor-clinical at the College of Veterinary Medicine. In 2015, she switched to being an assistant professor on the tenure track. She was promoted to associate professor in 2017 and given tenure. In 2022, the tenure initiating unit unanimously voted to promote Dr. Aarnes to full professor. However, the newly-appointed chair Defendant Marolf halted Dr. Aarnes promotion in February 2023, based on unsubstantiated complaints against Dr. Aarnes.

13. From 2018-2021, Dr. Aarnes received yearly reviews rating her performance as either exceeds expectations or greatly exceeds expectations. In most of the reviews, the previous department chairs noted that Dr. Aarnes had a direct but collegial interactions with staff and faculty.

14. In her 2021 review, former chair Dr. Richard Bednarski stated that Dr. Aarnes's "body of work is sufficient for [her] to enter the Fall 2022 [promotion and tenure] process." Dr. Aarnes followed Dr. Bednarski's suggestion and applied for promotion to professor.

15. As part of the promotion process, the College compiled a dossier that contained Dr. Aarnes's resume and professional accomplishments, peer evaluations, student evaluations, and recommendations.

16. The peer evaluations were outstanding, with one evaluator stating that she directed classroom conversation "masterfully," and was "not domineering or overbearing."

17. The student evaluations dated back to 2013 and were on a 1 to 5 scale. The averages in each category for each class were all over 4 with some being as high as 4.9.

18. The recommendations from outside of OSU were also outstanding, indicating that Dr. Aarnes is a top expert in her field of veterinary anesthesiology.

19. Based on the dossier, in October 2022, the council of eligible faculty unanimously voted to approve Dr. Aarnes for promotion. The council noted that "Dr. Aarnes is dedicated to the profession and collegial. It is important to note that she has been an advocate for the wellbeing of house offices." The council further noted that "she has been an ambassador for [the Department's] residents and graduate students and that "she has managed her responsibilities with high standards." The council noted Dr. Aarnes's "collaborative approach and task-oriented mindset."

20. In October 2022, Dr. Bednarski also recommended Dr. Aarnes for promotion to professor. In his recommendation, Dr. Bednarski noted that Dr. Aarnes is "considered one of the top experts, if not the leading expert in the pharmacology of anesthetic drugs." He further noted that Dr. Aarnes "has a strong history of supporting resident and graduate research" and had "successfully mentored several anesthesia residents." Dr. Aarnes had been "asked by the section of small animal surgery to become the research advisor for several of their residents and . . . students." "Dr. Aarnes willingly and unselfishly did so and has successfully guided them all to successful completion of their programs."

21. The promotion recommendation was sent to the dean who also recommended promoting Dr. Aarnes to full professor.

22. While Dr. Aarnes has endured differed treatment based on her direct communication style throughout her time at OSU, the differing treatment started to escalate in 2022.

23. In early 2022, a resident Kaitlynn Ban complained about Dr. Aarnes. OSU's Human Resources department decided not to initiate any investigations, instead, instructing Dr. Ban that she needed to learn to accept feedback from everyone. However, Human Resources also instructed Dr. Aarnes to provide feedback to Dr. Ban only around others. Dr. Aarnes objected that such public feedback could harm her working relationship with Dr. Ban, but Human Resources was insistent that Dr. Aarnes should follow this new procedure. Importantly, Dr. Aarnes knows of no male colleague who has received similar instructions.

24. Dr. Aarnes's predictions turned out to be true, and her working relationship with Dr. Ban did not improve—*i.e.*, Dr. Ban continued to take feedback poorly. Additionally, Dr. Ban frequently was unprepared for her clinical cases, arrived late, was not ready to work, and struggled with clinical decision-making—all of which led to Dr. Aarnes's having to provide constructive feedback to Dr. Ban in the presence of other people.

25. Starting in October 2022, Dr. Aarnes started to overhear conversations between Dr. Ban and several veterinary technicians. These conversations included disparaging, hurtful, and negative comments about Dr. Aarnes and were frequently made in front of students. In at least one conversation, the word "bitch" was used to describe Dr. Aarnes.

26. Dr. Aarnes raised concerns regarding this treatment, but Defendants took no action.

27. In late January 2023, Dr. Ban filed an unsupported claim against Dr. Aarnes, wrongly claiming that Dr. Aarnes treated male residents better than female residents.

28. On February 3, 2023, Defendant Marolf used this new allegation to reopen Dr. Aarnes's promotion decision. Defendant Marolf, the new chair, purported to revoke the chair's recommendation and send the decision back to the faculty committee. Such actions were in direct violation of Defendants' Policies and Procedures Handbook, which affirmatively states that new

5

information cannot be added to a candidate's dossier after it has been submitted to the Office of Academic Affairs—*i.e.* the tenure initiating unit and chair have reviewed. As Dr. Aarnes's dossier had been submitted to the Office of Academic Affairs in 2022, the new (and false) allegations made in 2023 should not have been considered.

29. Following an accident with a horse recovering from anesthesia, January 2023, Defendant Marolf also started to question Dr. Aarnes's management of patients, medical decision making, and medical knowledge. However, Defendant Marolf has not scrutinized male faculty in similar situations.

30. On February 15, 2023, Dr. Aarnes filed a complaint regarding the disparate treatment she had been receiving from Defendant Marolf.

31. The reason for Defendant Marolf's disparate treatment became abundantly clear on February 20, 2023, when Defendant Marolf sent Dr. Aarnes a purported performance improvement plan.

32. Dr. Aarnes does not communicate in a stereotypical female fashion. Instead, Dr. Aarnes is direct, focused, and clear in her feedback and expectations. However, Defendant Marolf expects female faculty to conform to how she thinks women should communicate.

33. The purported performance improvement plan mandated that Dr. Aarnes become aware of other social interactive styles; adapt her social interactive style to others; and offer feedback in a manner that is "mentoring, supporting, and fostering." The plan also mandated that Dr. Aarnes learn a new communication style that is considered "courteous."

34. Furthermore, even though Defendants previously had recognized that Dr. Ban was unable to accept constructive feedback, Defendant Marolf sided with Dr. Ban regarding the unfounded allegations. Without waiting for any investigation, Defendant Marolf removed

Dr. Aarnes from the Anesthesia and Pain Management Clinical Service and prohibited Dr. Aarnes from participating in other activities related to Anesthesia and Pain Management section, including activities involving interns, residents, staff, and faculty. This prohibition included clinical teaching, resident training and mentoring, faculty mentoring, service meetings, journal clubs, resident rounds, and staff supervision. Defendant Marolf further prohibited Dr. Aarnes from continuing her research and scholarship if it involved any of the individuals described above (*i.e.* interns, residents, staff, or faculty).

35. Defendant OSU conducted an investigation into Dr. Ban's allegations and found that the allegations were unsubstantiated.

36. Despite Dr. Ban's allegations being unfounded, Defendants have not continued with Dr. Aarnes's promotion to full professor, and Defendants only recently reinstated Dr. Aarnes into the Anesthesia and Pain Management Clinical Service.

37. Defendants have a pattern and practice of treating woman differently than men and, in particular, treating women who do not conform to female stereotypes differently than men or other women who do conform more to female stereotypes.

**FIRST CAUSE OF ACTION**
**(Title VII and Ohio Rev. Code § 4112.02—Sex Discrimination)**

38. Plaintiff incorporates all of her allegations set forth in paragraphs 1 through 37 as if fully rewritten.

39. Defendants Ohio State University and the OSU College of Veterinary Medicine discriminated against Dr. Aarnes with respect to the terms, conditions, and privileges of employment, including her salary, because of her sex.

40. Defendants failed to pay Dr. Aarnes commensurate with the other male employees of similar rank in the same Department. Defendants failed to pay Dr. Aarnes a commensurate

7

salary because of Dr. Aarnes's sex, in violation of 42 U.S.C. § 2000e-2 and Ohio Rev. Code § 4112.02(A).

41. Defendants also discriminated against Dr. Aarnes and treated her differently than male colleagues and more stereotypical female colleagues through putting Dr. Aarnes on a performance improvement plan and removing her from the Anesthesiology and Pain Management Service based solely on the fact that Dr. Aarnes's communication style is not stereotypically female in that Dr. Aarnes is direct and clear in her feedback and expectations from residents, staff, and students. Rather than recognizing that women can have differing communication styles, Defendants insisted that Dr. Aarnes change her communication style to become more stereotypically female—*i.e.* to be more mentoring, supporting, and fostering.

42. By discriminating against Dr. Aarnes based on her sex, Defendants committed unlawful employment practices in violation of 42 U.S.C. § 2000e-2 and Ohio Rev. Code § 4112.02(A).

43. Dr. Aarnes is a member of a protected class.

44. Dr. Aarnes complied with all administrative prerequisites necessary to commence civil litigation under Title VII of the Civil Rights Act of 1964 and Ohio Rev. Code § 4112.02(A). Dr. Aarnes's Right to Sue Letter is attached as Exhibit A.

45. As a direct and proximate cause of Defendants' conduct set forth above, Dr. Aarnes has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Equal Pay Act)

46. Plaintiff incorporates all of her allegations set forth in paragraphs 1 through 45 as if fully rewritten.

47. At all relevant times, Defendants Ohio State University and the OSU College of Veterinary Medicine have been an "employer" within the meaning of the Equal Pay Act.

48. The Equal Pay Act makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex." 29 U.S.C. § 206(d)(1).

49. Defendants employ Dr. Aarnes and four males as associate professors in the Veterinary Clinical Service Department of OSU's College of Veterinary Medicine.  Dr. Aarnes and her male colleagues' positions require substantially equal skill, effort, and responsibility; they perform their duties under similar working conditions; and they are to perform substantially equal work.

50. However, Defendants pay Dr. Aarnes a lower wage than all four male associate professors.  Additionally, a male assistant professor, who has less responsibilities and does not have tenure, is paid nearly the same salary as Dr. Aarnes.

51. The differential in pay between the male professors and Dr. Aarnes (a female) is not because of a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, or any other factor other than sex.

52. Defendants caused, contributed to, and caused the continuation of wage rate discrimination based on sex in violation of the Equal Pay Act.

53. As a direct and proximate cause of Defendants' conduct set forth above, Dr. Aarnes has suffered damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Title VII and Ohio Rev. Code § 4112.02—Hostile Work Environment)

54. Plaintiff incorporates all of her allegations set forth in paragraphs 1 through 53 as if fully rewritten.

55. Defendants Ohio State University and the OSU College of Veterinary Medicine subjected Dr. Aarnes to unwelcome, harassing, demeaning, and intimidating comments, which occurred on a regular basis.

56. The harassment was sufficiently severe and pervasive, altered the conditions of Dr. Aarnes's employment, and created an abusive working environment.

57. Defendants conduct was directed at Dr. Aarnes based on her sex.

58. Defendants conduct had the effect of unreasonably interfering with Dr. Aarnes's work performance.

59. Defendants knew about the harassing conduct because Dr. Aarnes filed complaints regarding the harassing behavior.

60. However, Defendants took no remedial action to protect Dr. Aarnes or otherwise address the harassing conduct.

61. By failing to act, Defendants knowingly ratified, approved, and permitted the continued sex discrimination and harassment.

62. Defendants subjected Dr. Aarnes to a hostile work environment in violation of 42 U.S.C. § 2000e-2 and Ohio Rev. Code § 4112.02(A).

63. Dr. Aarnes complied with all administrative prerequisites necessary to commence civil litigation under Title VII of the Civil Rights Act of 1964 and the Ohio Revised Code.  *See* Exhibit A.

64. As a direct and proximate cause of Defendants' conduct set forth above, Dr. Aarnes has suffered damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Ohio Rev. Code § 4112.02(J)—Aiding and Abetting Sex Discrimination)**

65. Plaintiff incorporates all of her allegations set forth in paragraphs 1 through 65 as if fully rewritten.

66. Defendant Marolf aided and abetted Defendants Ohio State University and the OSU College of Veterinary Medicine in the unlawful discriminatory practices—*i.e.* sex discrimination and hostile work environment based on sex, in violation of Ohio Rev. Code § 4112.02(J).

67. Dr. Aarnes complied with all administrative prerequisites necessary to commence civil litigation under Ohio Rev. Code § 4112.02.

68. As a direct and proximate cause of Defendant's conduct set forth above, Dr. Aarnes has suffered damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Title VII and Ohio Rev. Code § 4112.02—Retaliation)**

69. Plaintiff incorporates all of her allegations set forth in paragraphs 1 through 68 as if fully rewritten.

70. Following Dr. Aarnes's complaints of sex discrimination, Defendants took several retaliatory actions, which were included in the purported performance improvement plan.

71. Dr. Aarnes's official complaints regarding sex discrimination constitute protected conduct under Title VII and the Equal Pay Act, and the complaint constitute opposing unlawful discriminatory practices under Ohio Rev. Code § 4112.02(I).

72. Defendants treated Dr. Aarnes differently with respect to the terms and conditions of her employment because of her participation in protected activity.

73. Defendants' conduct constitutes retaliation, which is prohibited by Title VII and Ohio Rev. Code § 4112.02(I).

74. As a direct and proximate cause of Defendants' conduct set forth above, Dr. Aarnes has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Turi Aarnes prays for judgment in her favor and against Defendants as follows:

A. An award of compensatory damages, attorney's fees, and litigation costs;

B. Pre- and post-judgment interest; and

C. All other legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Stefanie L. Coe
Stefanie L. Coe (0078265)
Tiffany L. Carwile (0082522)
ARNOLD & CLIFFORD LLP
115 W. Main St., 4th Floor
Columbus, Ohio 43215
Ph: (614) 460-1600
Email: scoe@arnlaw.com
tcarwile@arnlaw.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

/s/ Stefanie L. Coe
Stefanie L. Coe