IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TURI K. AARNES,** | : |
| | : Case No. 2:24-cv-2146 |
| **Plaintiff,** | : |
| | : Judge Algenon L. Marbley |
| v. | : Magistrate Judge Elizabeth Preston Deavers |
| | : |
| **THE OHIO STATE UNIVERSITY** | : |
| | : |
| **Defendant.** | : |

**OPINION & ORDER**

This matter is before the Court on Defendant Ohio State University's Motion for Judgment on the Pleadings (ECF No 17). For the reasons stated below, the Motion is **GRANTED in part and DENIED in part**.

**I.      BACKGROUND**

Plaintiff Dr. Turi Aarnes is a tenured Associate Professor in the Veterinary Clinical Sciences Department at Ohio State University's College of Veterinary Medicine. (ECF No. 5 ¶ 9). She brings this action asserting claims under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act, alleging that she was subjected to sex-based discrimination, a hostile work environment, retaliation, and unequal pay.

On May 3, 2024, Plaintiff filed a complaint against three defendants: The Ohio State University ("Defendant"), the College of Veterinary Medicine ("Vet School"), and the Chair of the Vet School's Department of Veterinary Clinical Sciences, Dr. Angela Marolf. (ECF No. 1). Upon filing of an Amended Complaint, the only remaining defendant is The Ohio State University. (ECF No. 5).

Plaintiff joined Defendant as an anesthesiology resident in July 2006. (*Id*. ¶ 9). She progressed through the academic ranks, transitioning to an "assistant professor-clinical," and in 2015, joining the tenure track. She was promoted to Associate Professor with tenure in 2017. (*Id*.).

According to the Amended Complaint, Plaintiff consistently received positive performance evaluations, with annual reviews from 2018 through 2021 reflecting ratings of "exceeds expectations" or "greatly exceeds expectations." (*Id*. ¶ 10). Her performance was further praised for maintaining direct yet collegial interactions with colleagues. (*Id*.). In 2021, the former department chair remarked that Plaintiff's "body of work is sufficient for [her] to enter the Fall 2022 [promotion and tenure] process." (*Id*. ¶ 11).

Following the former chair's suggestion, Plaintiff applied for promotion to professor. (*Id*.). Accordingly, the Vet School compiled a dossier with a comprehensive summary of her credentials, which she alleges included exceptional peer and student evaluations, along with laudatory external letters characterizing her as "a top expert in her field of veterinary anesthesiology." (*Id*. ¶¶ 12–15). In October 2022, she received a unanimous vote in favor of promotion and a strong recommendation from her then-chair, who cited her scholarly contributions and mentorship of residents. Plaintiff claims that the former chair's recommendation noted that she is "considered one of the top experts, if not the leading expert in the pharmacology of anesthetic drugs," and that she "has a strong history of supporting resident and graduate research" as she "successfully mentored several anesthesia residents." (*Id*. ¶¶ 16–18). This recommendation was allegedly sent to the dean who also recommended promoting Plaintiff to full professor. (*Id*. ¶ 18).

Around the same time, however, a resident, Dr. Kaitlynn Ban, made a complaint about Plaintiff based on the feedback Plaintiff offered. (*Id*. ¶ 20). Plaintiff asserts that Defendant's Human Resources department instructed Ban "that she needed to learn to accept feedback from

2

everyone" while also instructing Plaintiff to only provide feedback to Ban in a public setting. (*Id.*). Plaintiff claims she objected to the public feedback as it could harm her working relationship with Ban, but Human Resources was nonetheless insistent on this new procedure. (*Id.*). Ban allegedly continued to take feedback poorly, and Plaintiff asserts that Ban frequently was unprepared for her clinical cases, arrived late, was not ready to work, and struggled with clinical decision-making—all of which led to public constructive feedback. (*Id.* ¶ 21).

Plaintiff further alleges that she became the subject of disparaging conversations between Dr. Ban and veterinary technicians. (*Id.* ¶ 22). These conversations were allegedly degrading and frequently occurred in the presence of students. (*Id.*). In one instance, Plaintiff alleges the word "bitch" was used to describe her. (*Id.*). Despite raising concerns, she contends that Defendant failed to take remedial action. (*Id.* ¶ 23).

In January 2023, Plaintiff asserts that Ban filed a complaint against her, alleging that Plaintiff treated male residents better than female residents. (*Id.* ¶ 24). Based on this complaint, Dr. Marolf purportedly reopened the promotion process, revoked the prior chair's recommendation for promotion, and returned the matter to the faculty committee. (*Id.* ¶ 25). Plaintiff argues this action contravened Defendant's established policies, which prohibit the addition of new information to a candidate's dossier once it has been submitted to the Office of Academic Affairs. (*Id.*).

Thereafter, Plaintiff alleges that Marolf began to scrutinize her clinical judgment and performance in a manner inconsistent with how similarly situated male faculty were treated. (*Id.* ¶ 26). This allegedly began following an anesthesia-related incident involving a horse. (*Id.*).

On February 15, 2023, Plaintiff filed an internal complaint alleging disparate treatment from Marolf. (*Id.* ¶ 27). Five days later, Dr. Marolf issued a performance improvement plan

3

requiring that Plaintiff modify her communication style to be more "courteous." (*Id.* ¶¶ 28, 30). She claims the performance improvement plan mandated that she become aware of other social interactive styles; adapt her social interactive style to others; and offer feedback in a manner that is "mentoring, supporting, and fostering" and learn a new communication style that is considered "courteous." (*Id.* ¶ 30). According to Plaintiff, Marolf took adverse actions against her without further investigation, including her removal from the Anesthesia and Pain Management Clinical Service and restrictions on her ability to conduct research and engage in mentorship activities. (*Id.* ¶ 31).

Ultimately, Defendant investigated Ban's allegations and found them to be unsubstantiated. (*Id.* ¶ 32). Although Defendant reinstated Plaintiff to her prior clinical responsibilities, her promotion to full professor has not been reinstated. (*Id.* ¶ 33).

Plaintiff contends that Defendant's actions reflect a broader institutional pattern of treating female faculty—especially those who do not conform to traditional gender norms—less favorably than their male counterparts. (*Id.* ¶ 34). On May 3, 2024, Plaintiff initiated this case, asserting claims under Title VII, the Ohio Rev. Code § 4112.02, and the Equal Pay Act. (ECF No. 1). All state-law claims as well as all claims against the Vet School and Dr. Marolf were voluntarily dismissed without prejudice. (ECF Nos. 3-5). The Amended Complaint, the operative pleading, asserts the following claims against Defendant: (1) sex discrimination under Title VII; (2) violation of the Equal Pay Act; (3) hostile work environment under Title VII; and (4) retaliation under Title VII. (ECF No. 5).

Defendant has moved for partial judgment on the pleadings. (ECF No. 17). Plaintiff filed her Response (ECF No. 18), to which Defendant filed its Reply (ECF No. 22). This motion is now ripe for review.

4

## II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion."). The court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks omitted).

The court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (internal quotation marks omitted). The court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. LAW & ANALYSIS

### A. Exhaustion of Administrative Remedies for Title VII Violation Based on Unequal Pay

In her first cause of action, alleging sex discrimination under Title VII, Plaintiff asserts that she was discriminated against "with respect to the terms, conditions, and privileges of employment, including her salary, because of her sex." (ECF No. 5 ¶¶ 36-37). Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to this claim as she did not allege discriminatory, unequal pay in the charge of discrimination that she filed with both the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 17 at 7). Defendant contends that she alleged several types of discrimination but failed to mark

the box for "Unequal Pay – based on sex only," and asserts that Plaintiff did not include any allegations of discrimination relating to her compensation in her charge to preserve that issue. (*Id.*).

Under Title VII, a plaintiff must first exhaust administrative remedies before bringing a claim in federal court. *Jones v. Johnson*, 707 F. App'x 321, 329 (6th Cir. 2017). Exhaustion requires filing a charge of discrimination with the EEOC within a prescribed time after the alleged unlawful conduct. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)). "The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004).

As a general rule, a plaintiff may not pursue claims in a judicial proceeding that were not first raised in the EEOC charge. *See Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000). That said, the "omission of a formal allegation in the EEOC filing is not always a fatal mistake." *Woodling v. GeoBuild, LLC*, No. 22-3499, 2023 WL 335283, at *2 (6th Cir. Jan. 20, 2023). The Sixth Circuit has held that a failure to include an explicit allegation in an EEOC charge does not automatically foreclose judicial review, provided the claim is reasonably within the scope of the agency's expected investigation. *Dixon*, 392 F.3d at 217. To satisfy the exhaustion requirement, the EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Younis*, 610 F.3d at 361 (quoting 29 C.F.R. § 1601.12(b)). In assessing sufficiency, courts construe charges liberally, allowing plaintiffs to raise "claims that are reasonably related to, or that grow out of, the factual allegations in the charge." *Id*. at 362. The judicial complaint is thus not strictly limited to the claims explicitly stated in the charge, but to those claims that are within "the scope of the EEOC investigation reasonably expected to grow out

6

of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002); *Dixon*, 392 F.3d at 217. When the facts alleged in the EEOC charge would reasonably prompt the agency to investigate a different, uncharged basis for discrimination, the plaintiff is not barred from pursuing that claim in court. *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

Here, Plaintiff's administrative charge fails to suggest any claim for unequal pay. Plaintiff did not check the box for "Unequal Pay – based on sex only" in the section identifying the type of discrimination and she makes no mention of disparities in pay. (ECF No. 17-1). Plaintiff argues that the narrative portion of her charge reasonably encompasses an unequal pay discrimination claim, as it alleges that Defendant treated male colleagues more favorably than their female counterparts and took retaliatory action against her after she raised concerns regarding such disparate treatment. (ECF No. 18 at 7). Plaintiff states in the charge:

> The administration did not follow promotion guidelines and there was no due process in evaluating the information that led to the violation of my civil and constitutional rights. Male faculty are routinely promoted following egregious behavior including discrimination and inappropriate relationships in the workplace.

(*Id.*). She further explains that she was reassigned to a less desirable position based on the discriminatory acts. (*Id.*). While these statements arguably allege sex-based disparities in promotions and disciplinary treatment, they make no reference—explicit or implicit—to disparities in compensation. Thus, the charge is devoid of any factual allegation that would reasonably prompt an investigation into unequal pay.

Plaintiff supports her position relying on *McFagdon v. Fresh Mkt., Inc.*, No. 05-2151-D/V, 2005 WL 2768996 (W.D. Tenn. Oct. 21, 2005). (ECF No. 18 at 7). *McFagdon*, however, undermines her argument. There, the court found that the plaintiff's EEOC charge supported factual allegations, not causes of actions. Based on the allegations in the EEOC charge, the defendant moved to dismiss the plaintiff's claims of constructive discharge, denial of training

7

opportunities, denial of overtime opportunities, unequal pay, and sex discrimination. *McFagdon*, 2005 WL 2768996, at *5. The court explained that the defendant confused the plaintiff's factual allegation with legal causes of action. *Id*. Indeed, the court found that "Constructive discharge, unequal pay, and denial of training and overtime opportunities could be reasoned to arise from Plaintiff's untimely dismissal and the allegation that Defendant has systematically excluded African Americans from management." *Id*. But the court ultimately held that these claims were not causes of action. *Id*.

This Court finds that general allegations of discrimination or retaliation, alone, are insufficient to preserve claims of wage discrimination. *See, e.g.*, *Cannon-El v. Meyer Tool, Inc.*, 2020 WL 13648537, *5 (S.D.Ohio June 8, 2020) ("Plaintiff does not explain how this is reasonably so, why a reasonable investigation of the racial discrimination and retaliation charges contained in his EEOC charge would have alerted Defendant to the possibility of a wage discrimination claim, or why any of the statements in his EEOC charge are enough to satisfy the expected scope of investigation test."). This is consistent with other courts in this circuit which have found that descriptions of pay discrimination based on gender are insufficient to give rise to an investigation of discrimination based on promotions. *See Thomas v. Wal-Mart, Inc.*, 2020 WL 1975792, *4 (N.D.Ohio Apr. 24, 2020) ("Plaintiff's EEOC charge makes only a passing reference to discrimination in promotions with her general statement that she "was discriminated against because of my gender (female) in pay and promotions." While she included a detailed paragraph explaining how she was discriminated against on the basis of pay, she offers no other discussion as to promotional disparity. Thus, the EEOC would not have investigated discrimination based on promotions.").

Although Plaintiff described discrimination related to promotion, she made no allegation giving rise to a claim that she was paid less than similarly situated male colleagues. Even under the liberal construction standard, this Court finds that the charge does not encompass a Title VII unequal pay claim.

Given that Plaintiff failed to exhaust her administrative remedies as to a Title VII unequal pay claim, Defendant's Motion for Judgment on the Pleadings is **GRANTED** as to that claim.

### B. Hostile Work Environment Claim

Plaintiff's third cause of action alleges a hostile work environment under Title VII. (ECF No. 5 ¶¶ 51-61). Under Title VII, a hostile work environment occurs "when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To state such a claim, a plaintiff must show: "'(1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex[ ]; (4) the harassment created a hostile work environment; and (5) employer liability.'" *Wyatt v. Nissan N. America, Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (quoting *Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 500 (6th Cir. 2009)).

At issue here is whether the harassment created a hostile work environment and whether it was based on sex. (ECF No. 17 at 8).

#### 1. Whether the Harassment Created a Hostile Work Environment

##### a. Discrete Acts of Discrimination

It is well-established that a plaintiff may bring two different types of claims under Title VII. A plaintiff can allege "that either (1) an employer engaged in 'discrete discriminatory acts' such as 'termination, failure to promote, denial of transfer, or refusal to hire'; or (2) the employer's

9

'repeated conduct' created a hostile work environment." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). "[A]llegations of discrete acts may be alleged as separate claims, and as such 'cannot properly be characterized as part of a continuing hostile work environment.'" *Id*. (quoting *Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005)).

The Sixth Circuit clarified in *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 902 n.14 (6th Cir. 2024), that "when a discrete act also contributes to a different and continuing harm—for example, the pervasive humiliation of an employee—its ancillary impacts may be considered in a hostile-work-environment claim." *McNeal*, 117 F.4th at 902 n.14. Accordingly, a plaintiff is barred "from including in a hostile-work-environment claim only those discrete acts that result in a separate discriminatory harm to the terms and conditions of employment that does not 'contribut[e]' to the alleged environment of harassment." *Id.* at 903 (quoting *Ogbonna-McGruder*, 91 F.4th at 840).

Defendant urges this Court to find that *McNeal* creates conflicting precedent and is not controlling. (ECF No. 22 at 3). It argues that certain conduct referenced by Plaintiff are discrete acts actionable only as disparate treatment claims. (ECF No. 22 at 8). The relevant conduct includes: (1) the filing of two complaints by Dr. Ban in early 2022 and January 2023; (2) the reopening of Plaintiff's promotion decision by Dr. Marolf; (3) Plaintiff's removal from the Anesthesia and Pain Management Clinical Service and the associated activities; and (4) the placement of Plaintiff on a performance improvement plan. (*Id*.).

The Court in *McNeal*, however, addressed Defendant's arguments about conflicting precedent. First, *McNeal* is not in conflict with the Supreme Court authority. The Supreme Court tasked district courts with determining "whether the acts about which an employee complains are

10

part of the same actionable hostile work environment practice." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). Notably, *Morgan* did not address the question of whether a discrete act of discrimination, which by itself may be actionable, can also constitute a contributing act in a hostile environment claim. *See, e.g.*, *D'Franco v. Fontainebleau Florida Hotel, LLC*, 2025 WL 906129, *6 (S.D.Fla. Mar. 7, 2025); *Green v. Brennan*, 578 U.S. 547, 557, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016) (citing *Morgan*, 536 U.S. at 115-121, 122 S.Ct. 2061) (noting that the Court in *Morgan* held "that a hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, whether those acts are independently actionable or not.").

The *McNeal* court clarified this point, explaining that "[a]n individual act within a hostile-work-environment claim '*may* not be actionable on its own,'—but there is no requirement that the act not be independently actionable." *McNeal*, 117 F.4th at 902. In other words, a discrete act may serve as both the basis for a disparate treatment claim and as evidence contributing to a broader hostile work environment.

Second, the Sixth Circuit rejected the notion that discrete acts must be placed into mutually exclusive categories. "Instead, we recognize that a single discrete act may contribute to different types of harms. To the extent that a discrete act, on its own, causes a change in the terms and conditions of employment, it may be challenged in a disparate-treatment claim." *McNeal*, 117 F.4th at 902 n.14. In *McNeal*, for example, the plaintiff referenced an assignment to complete a traffic study as an act for his hostile-work-environment claim. The Sixth Circuit noted that the "significance of the traffic study for hostile-work-environment purposes is that the [defendant] allegedly used the assignment strategically in a broader effort to discredit [the plaintiff]." *Id.* at 901–02. Rather than assert that the traffic study itself was harassment, the plaintiff argued that "he

11

was set up to fail from the beginning because he was 'provided no training or direction.'" The court found that the evidence supporting a hostile-work-environment claim is not the unfavorable assignment itself but the fact that the defendant allegedly engaged in conduct contributing to the hostile work environment. The actions appeared designed to undermine, humiliate, and subject the plaintiff to embarrassment before his colleagues; to create a pretext for further disciplinary measures by setting the plaintiff up to fail under unreasonable expectations; and to intensify scrutiny of his performance by requiring him to report his progress to two supervisors on a weekly basis. *Id*. at 901. The court held that the evidence may be used to support his hostile-work-environment claim, concluding that "[w]hether a given act contributes to a hostile work environment does not turn on whether that act might support a separate claim." *Id*. at 903–04.

In light of the guidance in *McNeal*, the alleged discrete acts here contribute to and thus are sufficient to support a claim of a hostile work environment. For example, Defendant argues that the two complaints filed against Plaintiff by Dr. Ban are discrete acts that cannot be considered. (ECF No. 22 at 8). Assuming these are discrete acts, while there is limited explanation about the first complaint, the allegations suggest the second complaint was a retaliatory response to Plaintiff's communication style and was unfounded, implying harassment. (ECF No. 5 ¶¶ 20-24).

Moreover, Marolf's reopening of Plaintiff's promotion decision and her removal from a clinical setting were allegedly based on unsupported claims related to complaints of Plaintiff's communication style. The conduct was also allegedly undertaken without any prior investigation. Notably, the reopening of the promotion decision was purportedly contrary to Defendant's own policies and resulted in Plaintiff's dossier being resubmitted to the faculty committee, now tainted by consideration of the false allegations. (*Id*. ¶¶ 25). This suggests harassing conduct beyond the discrete acts themselves.

12

Similarly, Defendants take issue with the performance improvement plan, but the significance of the plan is that it allegedly included instruction that Plaintiff alter her personality in a stereotypical female manner over time, supporting a hostile environment claim. (*Id*. ¶¶ 29-31).

As in *McNeal*, the discrete acts may be considered to the extent they contribute to the environment of harassment.

### b. The "Severe or Pervasive" Standard

To prevail on a hostile-work-environment claim under Title VII, "a plaintiff must show that the work environment was both subjectively and objectively hostile; in other words, that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well." *Smith*, 813 F.3d at 309. Ultimately, this Court must consider whether the harassment was so severe and pervasive as to constitute a hostile work environment. *Id*.

The Sixth Circuit has traditionally recognized that the bar for establishing a hostile work environment is "relatively high." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). The court, however, recently acknowledged a shift in the "severe and pervasive" analysis in light of the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). In *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 904 (6th Cir. 2024), the court concluded that the holding in *Muldrow* —that a plaintiff need not show "significant" harm for disparate impact claims—applies equally to hostile-work-environment claims. *McNeal*, 117 F.4th at 904.

Under this revised framework, a plaintiff need only demonstrate that the employer's discriminatory work environment resulted in "'some harm respecting an identifiable term or condition of employment.'" *McNeal*, 117 F.4th at 904 (quoting *Muldrow*, 601 U.S. at 355). The relevant inquiry is whether the work environment left an employee "worse off respecting employment terms or conditions." *Id*. Despite the lowered threshold, courts continue to evaluate

13

hostile-work-environment claims based on the totality of the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). District courts have begun applying this standard. *See, e.g., Yoder v. Ohio State Univ.*, 2025 WL 755276, *8 (S.D. Ohio Mar. 10, 2025) (applying the factors and the "worse off" standard when resolving a motion for judgment on the pleadings on a hostile-work-environment claim post-*McNeal*); *Collins v. City of Detroit*, 2025 WL 1019754, *7 (E.D. Mich. Apr. 4, 2025) (applying McNeal and finding that "the plaintiff is not required to allege any particular level of egregious mistreatment, only to describe a totality of instances sufficient to alter the conditions of her employment in some way.").

Taking Plaintiff's well-pleaded material allegations as true, she has sufficiently alleged that the environment was severe and pervasive enough to constitute a hostile work environment. She alleges that beginning in October 2022, she overheard frequent disparaging comments by Dr. Ban and veterinary technicians, including being referred to as a "bitch." (ECF No. 5 ¶ 22). In January 2023, Dr. Ban filed an unsubstantiated complaint alleging that Plaintiff treated male residents better than female residents (*Id*. ¶ 24). As a result, in February 2023, Plaintiff's promotion decision was reopened, the recommendation was revoked, and she was eventually removed from certain work-related activities (*Id*. ¶ 25). Despite raising concerns with Defendant, no corrective action was taken (*Id*. ¶ 25). Dr. Marolf reopened Plaintiff's previously approved promotion based on the alleged false complaint without further investigation and submitted it to the faculty committee for their consideration. (*Id*. ¶¶ 25, 31). Also in February 2023, Plaintiff was placed on a performance

14

improvement plan that required her to conform to a stereotypically "female" communication style (*Id*. ¶¶ 29–31).

These allegations, taken together, describe a pattern of conduct that occurred over the span of several months, impacted her career advancement, and subjected her to humiliation in the workplace. (ECF No. 18 at 11). A plaintiff is not required to show that "each incident of harassment standing alone is sufficient to sustain the cause of action," but rather that the incidents, taken together, make out such a case. *McNeal*, 117 F.4th at 902–03 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999)). Nor must she show that the harassment "seriously affect[ed] [his] psychological well being" or caused him to "suffe[r] injury"—only that the environment "would reasonably be perceived . . . as hostile or abusive." *Id*. (quoting *Harris*, 510 U.S. at 22 (alteration in original) (citation omitted)). Plaintiff has met this threshold.

Accordingly, Plaintiff has plausibly alleged "some harm" and that she was "worse off respecting employment terms or conditions," as articulated in *McNeal*. Considering the totality of the circumstances, she has sufficiently pleaded that her work environment was hostile within the meaning of Title VII.

### 2. Whether the Harassment Was Based On Sex

Defendant argues that Plaintiff's hostile-work-environment claim also fails because she does not allege that she was harassed *because of her sex*. (ECF No. 17 at 13). Conduct may support such a claim when the plaintiff demonstrates that, but for her sex, she would not have been the object of the harassment. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). As the Supreme Court emphasized, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80 (1998) (quoting *Harris,* 510 U.S. at 25 (Ginsburg, J., concurring)).

15

The Sixth Circuit has also recognized that claims of "non-sexual conduct may be illegally sex-based where it evinces 'anti-female animus, and therefore could be found to have contributed significantly to the hostile environment.'" *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (quoting *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 905 (1st Cir.1988)). To meet this standard, a plaintiff "must show that but for the fact of her sex, she would not have been the object of harassment." *Id.* (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

Here, Defendant argues that the actions Plaintiff complains of—being instructed to provide feedback to a resident publicly, being the subject of an unsupported complaint, overhearing disparaging remarks, being placed on a performance improvement plan, and being criticized for a horse anesthesia incident—lack any indication of gender-based animus. (ECF No. 17 at 15). According to Defendant, these incidents do not plausibly support an inference that Plaintiff was treated differently *because* she is a woman. (*Id.*).

The alleged discriminatory nature of the conduct, however, lies in the different standard allegedly applied to Plaintiff as a woman who did not conform to stereotypical expectations. As Plaintiff notes in her response, she alleged in her Complaint that she "does not communicate in a stereotypical female fashion." Based on her communication style, she was instructed to give feedback in front of others and alleges she knows of no male colleagues receiving similar instructions. (ECF No. 5 ¶¶ 20, 29). She was subsequently placed on a performance improvement plan that emphasized the need for "more mentoring, supporting, fostering, and courteous" behavior, which are qualities Plaintiff characterizes as reflecting stereotypical expectations of female conduct. (*Id.* ¶¶ 28-30). Moreover, according to Plaintiff, her management style and

16

medical decisions were scrutinized in a manner not experienced by similarly situated male faculty. (*Id.* ¶ 26).

While the allegation that she was referred to as a "bitch" at least once, standing alone, may be insufficient to support a hostile-work-environment claim, her broader allegations suggest a pattern of criticism and exclusion following complaints about her non-stereotypical communication style. Specifically, beginning in 2022, she alleges that she began to overhear "disparaging, hurtful, and negative comments" made by Dr. Ban to veterinary technicians. (*Id.* ¶ 22). This allegedly happened after Ban complained about, and Human Resources addressed, Plaintiff's communication style. This suggests the conversations were rooted in gendered expectations. (*Id.* ¶¶ 20-22).

Taken together, her allegations that she was subject to criticism, discipline, and unequal treatment were not simply because of her communication style and actions alone, but because she did not conform to gendered expectations of how a female faculty member should interact with others.

Such allegations, viewed in the light most favorable to the Plaintiff, are sufficient at this stage to support a claim of hostile work environment. Accordingly, Defendant's motion for judgment on the pleadings is **DENIED** with respect to Plaintiff's hostile-work-environment claim, as she has sufficiently alleged that she was subjected to severe or pervasive harassment because of sex.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings (ECF No 17) is **GRANTED in part and DENIED in part**. The motion is denied with respect to the

hostile work environment claim, and granted with respect to any Title VII claim she asserts on the basis of unequal pay.

    **IT IS SO ORDERED.**

                                      **ALGENON L. MARBLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**DATED: September 25, 2025**